BROOKE, L,
dissented: he' said — this case is, I think, an important dhe, since it involves the point decided in the case of Maria v. Surbaugh. There, a testator bequeathed a female slave to his son, with a provision that she should . be free at the age of thirty-one years; she had children born after the testator’s death and before she was thirty-one; and the 'question was, whether these 'children were born slaves? or born free? or persons bound to service for limited time? The point had never before been ¡decided ; and the court after great consideration held, that they rhüst follow the actual condition of their mother at the time of their birth, and that as she was then a slave, though she. was afterwards to be free, therefore they were born slaves. In the case before us, I think the boys, Green and Henry, born while their mother Patty was a slave though she- was to be free at the age'of twénty-óne, must be held *to be slaves until they attain to the age of t'wenty-o'ne, according to the particular provisions of his will. In Maria v. Surbaugh, the claim was, that 'the children of Maria born before she attained to the age of thirty-one,' were free born; and that case was decided on its merits. Here, it is admitted, that Green and Hénry were slaves; and the object of the bill was to protect them from the treatment of their masters till they shall attain to the age of twenty-one, when they are to be free. Their case is a hard one; every case of slavery is a hard one: but there are considerations connected with it of á very delicate nature. The rights of the master musí be controlled, the 'moral influence that subjects the slave to the master disregarded, and a spirit of hostility engendered while they continue to be slaves, calculated to diminish their value while slaves': the property of t^e master is to be invaded in a manner subversive of the institution ' of slavery, and likely to have an influence on those who are slaves for life; and the next step maybe to interfere with th'e master in their case also, if the humanity of' the court is to be appealed to. I admit the' right of a testator to emancipate'his slaves prospectively, because I" submit to' the' decisions of this court, though I think there is nothing in the law, which authorizes it': but while I do this, I insist that, i'n such case, the testator must make complete provision for the object, . and not rely on the court of chancery to become the guardian ' of his infant slaves, and thereby to enfeeble the master’s rights' while they continue slaves.
■ The case of Erskine v. Henry is entirely unlike this. That' case was decided by a bare court; I did not sit in it, or I should have dissented. There the question was presented upfon the will of ‘one M’Coy, by parties who claimed the negroes as their property; and the court, instead of deciding that question, which was a pure question of property, decided that the negroes were free under the will; and that too, notwithstanding *that in a former suit brought by the negroes against Erskine for théir freedom, they had been adjudged to be slaves, and this court had refused to' allow a supersedeas to the judgment; for it was said, Erskine had no title to them, though' he. had a verdict and judgment against them as slave's, in their jjauper suit for freedom. This was confounding the question of property with the question of freedom; which, unfortunately, has been too often done. Elder v. Elder’s ex’or has as little application to the present case. In that case, the testator’s will provided amply for the emancipation of all his slaves, the young and the old, if they would consent to go to Liberia; they were free at the testator’s death upon condition that they should consent to go to' Liberia; and it was only necessary to apply to the court of chancery to carry the provision into effect. — Though I reluctantly differ from my brothers, I am of opinion that this decree ought to be reversed, the injunction dissolved, and the bill dismissed.
Decree affirmed.